UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CHARLENE BENNETT,

           Plaintiff,

v.

HOME DEPOT USA, INC.,

           Defendant.

MEMORANDUM & ORDER
23-CV-08622 (NRM) (AYS)

---

NINA R. MORRISON, United States District Judge:

This is a personal injury lawsuit arising from an incident at a Home Depot in Levittown, New York. Plaintiff Charlene Bennett slipped on a pool of detergent while shopping for cleaning products. She brings suit against Defendant Home Depot USA, Inc. ("Home Depot"), alleging that Home Depot breached its duty to keep and maintain premises in reasonably safe condition. After discovery, Home Depot filed a motion for summary judgment. For the reasons that follow, the Court grants Home Depot's motion for summary judgment.

## BACKGROUND

### I. Factual Background

The following facts are drawn from the summary judgment record and are undisputed unless otherwise indicated.

On the afternoon of February 16, 2023, Bennett drove to a Home Depot in Levittown, New York with her husband, John, to purchase cleaning supplies. Dep. of Charlene Bennett dated Aug. 30, 2024, Def. Ex. C ("Bennett Dep.") at 7–9, ECF

1

No. 26-5; Def. Rule 56.1 Statement ("Def. 56.1 Stmt.") ¶ 1 n.1, ECF No. 26-1.[1] When she arrived, she followed signs to the aisle with cleaning supplies. Bennett Dep. at 10. She reports that there was proper lighting and that she had no problems seeing ahead of her. *Id.* at 11–12.

Bennett made a right turn into the aisle with cleaning supplies, later identified as "Aisle 19." Bennett Dep. at 11–12; Def. 56.1 Stmt. ¶ 10; *see also* Dep. of Herold Abraham dated Oct. 21, 2024, Def. Ex. D ("Abraham Dep.") at 10, ECF No. 26-6. There were no other customers or employees in the aisle at the time. Bennett Dep. at 12. As Bennett turned into the aisle, she walked towards a container of Ajax on her left, which was displayed below eye level. *Id.* at 12–14. She did not observe any merchandise on the floor. *Id.* at 14. Bennett reached to grab the container, then fell as her right foot slipped. *Id.* at 13, 15–16. At the time, John was "further up" in the aisle towards the back of the store on his phone. *Id.* at 14–15.

After falling to the ground, Bennett saw that she was lying in a pool of light-blue liquid, which she identified as detergent. Bennett Dep. at 17–18. The pool was about a foot in diameter, slightly larger than a dinner plate. *Id.* at 19. The liquid was also on Bennett's leggings and upper body. *Id.* at 21. Bennett observed that the detergent had come from a container on the same shelf as the Ajax, lying on its side, though she could not remember whether the container was capped. *Id.* at 22–23. She did not see any containers of detergent or bottle caps on the floor. *Id.* at 20. Bennett

---

[1] Unless otherwise indicated, all page references use the pagination provided by the Electronic Case Filing System.

also noted that "[t]he whole aisle had different cleaners in it," but that she had not noticed any liquid detergent on the shelves near the Ajax prior to her fall. *Id.* at 19–20.

After about five minutes, several employees including assistant store manager Herold Abraham came to Bennett's assistance. Bennett Dep. at 20, 26; Abraham Dep. at 7, 9. Abraham observed that Bennett "was in discomfort and pain," and asked if she needed an ambulance. Abraham Dep. at 16. Bennett was given an ice pack but otherwise refused medical attention. *Id.* at 12. She told Abraham that she had fallen because of liquid from a leaking bottle. *Id.* at 12. Other employees then came to "pull[] out the shelves" and the bottle of detergent "was leaking even more." Bennett Dep. at 26.

Bennett's counsel deposed Abraham on October 21, 2024 regarding Abraham's involvement in the incident as well as the store policies at the Levittown Home Depot. Abraham stated that on the day of the incident, he "couldn't really tell" what had caused Bennett to slip because "there was some powder" covering the ground. Abraham Dep. at 9. He took a photo documenting the area where Bennett had fallen. *Id.* at 10–11. The photo appears consistent with Abraham's description, showing a large amount of white powder covering what looks like light-blue liquid. Photo, Def. Ex. E at 2, ECF No. 26-7. Though Abraham never personally verified the identity of the liquid or the leaking container on the shelf, Defendant does not dispute that it was detergent. Def. 56.1 Stmt. ¶ 16.

As for store practices, Abraham testified that employees "walk the floor

3

throughout the day" and that there was an "in-focus team" that would do "audits" to note any problems in the store. Abraham Dep. at 5. If a hazard was found, employees would close off the area with "safety gates." *Id.* at 4. Employees were not required to log or document their inspections or any action taken in response to hazards. *Id.* at 4–5. Abraham also stated that he "believe[s]" that he personally did a 10-minute walkthrough of the store at the start of his shift on the day in question. *Id.* at 7. He was unaware of whether there was video footage of Aisle 19 on that day, though he knew that there were surveillance cameras in the store. *Id.* at 8. Finally, Abraham was not aware of any complaints or incidents regarding Aisle 19 on the day of the incident or any day prior. Abraham Dep. at 12–13. Defendant also conducted a search for similar incidents recorded at the Levittown store dating back three years, and found no such incidents. Def. 56.1 Stmt. ¶ 41.

## II.     Procedural Background

Bennett filed suit against Home Depot in the Supreme Court of New York, Nasasau County, on October 17, 2023. Summons & Compl. ("Compl."), ECF No. 1-1. On October 31, 2023, the parties proceeded to mediation. Ltr. dated Jan. 9, 2024 at 1, ECF No. 11. The case was subsequently removed to this Court on November 20, 2023 on the basis of diversity jurisdiction. Notice of Removal, ECF No. 1. On July 8, 2025, Home Depot filed its motion for summary judgment. Mot. for Summ. J., ECF No. 26.

In Bennett's response to Defendant's Rule 56.1 submission, she disputes only two relevant facts. First, she disputes Defendant's statement that "Mr. Abraham had

4

no knowledge of any other incidents in Aisle 19 prior to [Bennett's] incident," Def. Rule 56.1 Statement ¶ 37, because "aside from the testimony of Mr. Abraham, the defendant has not proven that it had no knowledge of prior incidents on Aisle 19," Pl. Rule 56.1 Statement ("Pl. 56.1 Stmt.") at 2, ECF No. 28-2.  Second, Bennett disputes Defendant's claim that no accidents were reported in the Levittown Home Depot prior to the date of her injury, Def. Rule 56.1 Statement ¶ 41, insofar as Defendant did not produce "any evidentiary material in support" of that statement, Pl. 56.1 Stmt. at 2.

## DISCUSSION

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are diverse in citizenship and the alleged amount in controversy is over $75,000.

Plaintiff has not adduced evidence tending to show that Defendant violated its duty of care, instead alleging that Defendant has not met its burden of proving that it did not breach its duty.  However, under the federal standard for summary judgment, a defendant has no such burden of proof at this stage of the case.  For the following reasons, the Court grants Defendant's motion for summary judgment.

### I. Standard of Review

"In *Celotex* [*Corp. v. Catrett*, 477 U.S. 317 (1986),] the Supreme Court made it clear that in cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under [Federal] Rule [of Civil Procedure] 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210–11 (2d Cir. 1988); *see Celotex Corp.*, 477 U.S. at 323–26.  Therefore, "[i]n federal

5

court, it is the plaintiff who, as the nonmoving party, bears the burden of showing a genuine dispute of material fact, even though a New York state court would require the *defendant* to produce affirmative evidence" on the relevant issues. *Cruz v. Target Corp.*, No. 13-CV-4662 (NRB), 2014 WL 7177908, at *3 (S.D.N.Y. Dec. 17, 2014).

For her part, Plaintiff does not expressly challenge the federal standard in her papers. On the contrary, in her Opposition, Plaintiff appears to accept the summary judgment standard as outlined by Defendant. *See* Pl. Mem. of L. in Opp'n ("Opp'n") at 2–3, ECF No. 28 ("Plaintiff acknowledges the law on summary judgment as presented generally in defendant's brief . . . ."). However, Plaintiff's arguments throughout the Opposition continually rely on cases applying the New York state standard for summary judgment. *See, e.g.*, Opp'n at 5, 8 (citing *Navetta v. Onondaga Galleries Ltd. Liab. Co.*, 964 N.Y.S.2d 835, 836 (N.Y. App. Div. 2013)); *id.* at 6 (citing *Arbit v. Costco Wholesale Corp.*, 218 N.Y.S.3d 125, 126 (N.Y. App. Div. 2024)); *id.* at 8 (citing *Wade-Westbrooke v. Eshaghian*, 802 N.Y.S.2d 11, 11 (N.Y. App. Div. 2005)).

Here, the federal standard plainly applies. Under the doctrine of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), in federal court, "the substantive law to be applied is State substantive law, while the procedural law to be applied is federal procedural law." *Picciano v. McLoughlin*, 723 F. Supp. 2d 491, 504 (N.D.N.Y. 2010). While applying this classification "is sometimes a subtle undertaking[,] . . . where the matter in question is one covered by the Federal Rules of Civil Procedure, 'it is settled that the Federal Rule applies regardless of contrary state law.'" *Com/Tech Commc'n Techs., Inc. v. Wireless Data Sys., Inc.*, 163 F.3d 149, 150–51 (2d Cir. 1998) (citation

6

modified) (quoting *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996)); *see also Hanna v. Plumer*, 380 U.S. 460, 469–74 (1965).

Here, "Rule 56 'answers the question in dispute'—the defendant's burden of proof when moving for summary judgment—so Rule 56 applies unless it violates the Rules Enabling Act or the Constitution." *Kirbaran v. Target Corp.*, No. 24-715, 2025 WL 973050 (2d Cir. Apr. 1, 2025) (summary order) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). Every circuit court that has addressed this issue has held the same. *See, e.g.*, *Gen. Acc. Fire & Life Assur. Corp. v. Akzona Inc.*, 622 F.2d 90, 93 n.5 (4th Cir. 1980); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009); *NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 683 n.20 (D.C. Cir. 1985).

## II.   Merits

The Court now turns to the merits of Plaintiff's negligence claim. Under New York substantive law, to establish a *prima facie* case of negligence in premises liability cases, "a plaintiff must show one of the following: (1) the owner created the defective condition that caused plaintiff's injury; (2) the owner had actual notice of the condition; or (3) the owner had constructive notice of the condition." *Janetos v. Home Depot U.S.A., Inc.*, No. 09-CV-1025 (AKT), 2012 WL 4049839, at *9 (E.D.N.Y. Sep. 13, 2012). Plaintiff fails to make any of these showings.

### A. Creation of the Dangerous Condition

Though Plaintiff alleged all three of the above elements in her Complaint, *see* Compl. ¶¶ 19–20, Plaintiff no longer alleges that Defendant was responsible for

7

creating the spill. In any case, there is no evidence in the record from which a reasonable jury could find that Defendant created the allegedly dangerous condition that caused Plaintiff's injuries here.

"Finding that [a] defendant created the dangerous condition requires 'some affirmative act' on the part of the defendant." *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004) (quoting *Fink v. Bd. of Educ.*, 498 N.Y.S.2d 440, 441 (N.Y. App. Div. 1986)). Plaintiff does not put forth any evidence showing such an action. "The mere fact that a puddle of liquid originated from store merchandise does not establish the creation of the puddle, because, the puddle is not a direct consequence of the defendant's passive activity of providing merchandise for sale." *Cooper v. Pathmark Stores, Inc.*, 998 F. Supp. 218, 220 (E.D.N.Y. 1998). Plaintiff generally criticizes Defendant's practices regarding the documentation of hazards (or lack thereof), *see, e.g.*, Opp'n at 5, but any such policy failure "[a]t most[] . . . indirectly led to the possibility of a dangerous condition, which is legally insufficient," *Lyman v. PetSmart, Inc.*, No. 16-CV-4627 (JCM), 2018 WL 4538908, at *6 (S.D.N.Y. Sep. 21, 2018); *see also Almodovar v. Wal-Mart Stores E., LP*, No. 23-CV-9353 (AEK), 2025 WL 2773182, at *4 (S.D.N.Y. Sep. 26, 2025) ("To the extent Plaintiff[] contends that Defendants created the water condition simply by having a self-service water filling station . . . in the store—even without evidence that the water originated from such a station—that argument is unavailing."). There is therefore no genuine dispute as to whether Defendant created the pool of detergent on which Plaintiff slipped.

    B. <u>Actual Notice</u>

Plaintiff also cannot show actual notice. "To prove actual notice, plaintiff must present proof that defendants were, in fact, aware of the dangerous condition." *Castellanos v. Target Dep't Stores, Inc.*, No. 12-CV-2775 (GWG), 2013 WL 4017166, at *4 (S.D.N.Y. Aug. 7, 2013) (internal quotation marks omitted) (quoting *Sanchez v. Pathmark Stores, Inc.*, No. 04-CV-1159 (GBD) (RLE), 2010 WL 1191633, at *2 (S.D.N.Y. Mar. 8, 2010)). Abraham testified that he was not aware of any prior complaints or incidents involving spills in Aisle 19. Abraham Dep. at 13; Def. 56.1 Stmt. ¶ 37. Plaintiff does not allege that Abraham or any other Home Depot employee was present at the time of the fall, or that they were otherwise made aware of the pool of detergent prior to her fall. Plaintiff's only relevant allegation is that Defendant cannot prove a lack of actual notice because of the store's policy to document such incidents. *See* Opp. at 5; Pl. 56.1 Stmt. at 2 ("Plaintiff denies the truth [of] the statement contained in paragraph 37 insofar as aside from the testimony of Mr. Abraham, the defendant has not proven that it had no knowledge of prior incidents on Aisle 19."). However, as already discussed, "[u]nder the federal summary judgment standard, Defendant is not required to put forth evidence demonstrating its lack of actual notice . . . ." *Alger v. Von Maur, Inc.*, No. 19-CV-6698, 2021 WL 1966773, at *3 (W.D.N.Y. May 17, 2021). Plaintiff can point to no evidence in the record tending to prove that Home Depot employees had actual notice of the spilled detergent prior to her fall. *See id.* ("Defendant must simply show that Plaintiff will not be able to prove at trial that Defendant had [] actual [] notice based on the evidence in the record.").

9

C. <u>Constructive Notice</u>

Last, Plaintiff fails to show constructive notice. To prove constructive notice of a dangerous condition, the "defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Nat. Hist.*, 67 N.Y.2d 836, 837 (N.Y. 1986).

Plaintiff has not adduced any evidence tending to show that the pool of detergent was visible and apparent, or that it was present for any significant length of time. She did not see any individuals in the aisle prior to her fall, Bennett Dep. at 12, 15, and did not photograph or otherwise contemporaneously document the incident, *id.* at 21. She does not remember whether the container on the shelf was uncapped, *id.* at 23, did not know if there were other similar containers on the shelf, *id.* at 25, how long the container had been there prior to her incident, *id.*, and whether anyone else had complained about the container, *id.* at 26. She further testified that she herself did not see the pool of liquid prior to slipping. *Id.* at 18. By contrast, Abraham testified that "managers, supervisors, and associates . . . walk the floor thoroughly" throughout the day and "are very, very firm" with taking action on potential hazards. Abraham Dep. at 4–5. He stated that he did not hear of any complaints or incidents in Aisle 19 on the day in question and was not aware of any similar incidents on any day prior. *Id.* at 12–13.

Courts in our circuit regularly find that there is no requisite showing of constructive notice under similar circumstances. *See, e.g., Castellanos*, 2013 WL

10

4017166, at *5–7; *Shimunov v. Home Depot U.S.A., Inc.*, No. 11-CV-5136 (KAM), 2014 WL 1311561, at *5–6 (E.D.N.Y. Mar. 28, 2014). "Although plaintiffs can establish constructive notice through circumstantial evidence, they must offer more than mere speculation that defendants should have been aware of a visibly hazardous condition." *Shimunov*, 2014 WL 1311561, at *5; *see also Crawford v. Walmart Inc.*, No. 23-CV-03960 (OEM), 2025 WL 2467043, at *4–7 (E.D.N.Y. Aug. 27, 2025) ("Plaintiff must do more than proffer a plausible theory — she must present evidence from which a reasonable jury could draw the reasonable inference Defendants had constructive notice of the particular condition at issue."). Ultimately, "[b]ecause [Plaintiff] did not notice the puddle and because [Plaintiff] ha[s] provided no evidence regarding for how long the detergent had been on the floor, 'it would be speculative to infer that [the detergent] had been on the floor for an appreciable length of time.'" *Casiano v. Target Stores*, No. 06-CV-6286 (NG), 2009 WL 3246836, at *4 (E.D.N.Y. Sep. 24, 2009) (last alteration in original) (quoting *Kraemer v. K-Mart Corp.*, 641 N.Y.S.2d 130, 131 (N.Y. App. Div. 1996)).

In response, Plaintiff again resorts to cases applying the New York state standard for summary judgment, which requires defendants to offer evidence about the last cleaning or inspection prior to the incident. *See* Opp'n at 6–7; *Arbit*, 218 N.Y.S.3d at 127. However, "[b]ecause the federal burden of proof applies, Defendant was not required to produce evidence of the last time the area was inspected or cleaned but need only point to Plaintiff's lack of evidence and inability to raise a genuine issue of material fact . . . ." *Decker v. Middletown Walmart Supercenter*

11

*Store*, No. 15-CV-2886 (JCM), 2017 WL 568761, at *9 (S.D.N.Y. Feb. 10, 2017); *accord Maitland v. Target Corp.*, No. 20-CV-3892 (MKB), 2023 WL 6282918, at *7 (E.D.N.Y. Sep. 26, 2023), *aff'd*, No. 23-7520, 2024 WL 5182674 (2d Cir. Dec. 20, 2024).

Plaintiff correctly notes that "the issue of actual or constructive notice is irrelevant where [the] defendant had a duty to conduct reasonable inspections of the premises and failed to do so." *Tuthill v. United States*, 270 F. Supp. 2d 395, 400 (S.D.N.Y. 2003); *see* Opp'n at 6. But Defendant has submitted testimony that Home Depot did regularly inspect the aisles for hazards, *see* Abraham Dep. at 4–5, and Plaintiff adduces no evidence to the contrary. In any case, even if it was shown that Defendant failed to conduct an inspection, Plaintiff "must still come forward with evidence showing that a reasonable inspection would have revealed the condition." *Wilson v. Wal-Mart Stores E., LP*, No. 16-CV-8637 (JCM), 2018 WL 4473342, at *8 (S.D.N.Y. Sep. 18, 2018). She has not done so.

Plaintiff has thus failed to show that there is a genuine dispute as to a material fact in this case, and she has not produced evidence from which a reasonable jury could hold Home Depot liable for her injuries.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated:   January 8, 2026
         Brooklyn, New York